## Templeton et al. v. Bowser.

*Contract—Sale of business—Agreement not to engage in trade—Restraint of trade.*

Where a person in selling his stock and business for a valuable consideration agrees not to engage in the same business, "directly or indirectly," within a stated territory, and that "all good-will . . . is sold," he cannot take orders for another person within the prohibited territory, although such other person is conducting business without such territory.

Motion to dissolve preliminary injunction.  C. P. Indiana Co., March T., 1923, No. 6.

*James W. Mock*, for plaintiffs.

*Peelor & Feit* and *E. E. Creps*, for defendant.

LANGHAM, P. J., April 19, 1923.—The matter to be considered here involves an interpretation of the contract between plaintiffs and defendant, made and entered into by the parties on July 21, 1922, and referred to in the bill as Exhibit A.

To arrive at a fair, just and equitable conclusion of the question involved, the entire contract must be considered.  The defendant concedes that it is a violation of the contract to do business on his own account in Clymer, or within a radius of five miles thereof by having a place of business within such territorial limits, but contends that it is not a violation of said contract to solicit business in the Borough of Clymer or within a radius of five miles thereof. He further contends that it is no violation of the contract, providing the execution of the business is for another person outside of Clymer or outside of the five-mile limit.  In other words, the defendant contends that engaging and doing undertaking work or furniture business in Clymer, providing he is doing it under the direction of some person outside of Clymer and outside the radius of five miles of Clymer, does not violate the contract.

It is argued that the contract limits the defendant as to how he shall not engage in the business formerly carried on by the Clymer Furniture Company in some capacities, and leaves it wide open to so engage in other capacities, and it is further argued that this contract must be construed strictly, because it is in restraint of trade.

That brings us to an interpretation of the contract which, *inter alia*, is as follows:

"Second. The party of the second part agrees with the party of the third part that as a part of the consideration paid to him for the said stock, the party of the second part does hereby agree that he will not engage in the business now carried on by the party of the first part, or in any part of the said business, either directly or indirectly, in the Borough of Clymer, Pennsylvania, or within five miles of the said Borough of Clymer, at any time from the date hereof, either individually, as a member of a partnership or firm, or as an officer, director or employee of any corporation, except by written consent of the party of the first and third part.

"Third. The party of the second part further agrees to render services to the party of the first part until August 31st, if necessary, at a salary of One Hundred Seventy ($170.00) Dollars per month.  Said services to be rendered in the same manner and same effect as though the party of the second part were still an interested party in the party of the first part.  It is further agreed by the party of the second part that this sale of his stock in the party of the first part is of his own volition, and that he will continuously defend

the good name of the party of the first part and the party of the third part and all interested parties in the party of the first part. That is to say, that all good-will in said company, namely, party of the first part, is sold with the interest in the party of the first part."

The primary rule in construing a contract of any kind, whether it is in restraint of trade or otherwise, is that the intention of the parties should be ascertained, and the first method of ascertainment is from the language of the agreement itself.

In the case at bar, what is the language of the agreement at the very threshold of the contract when the minds of the parties first met: That the defendant "does hereby agree that he will not engage in the business now carried on by the party of the first part or in any part of the said business, either directly or indirectly, in the Borough of Clymer, at any time from the date hereof, either individually, as a member of a partnership or firm, or as an officer, director or employee of any corporation, except by written consent of the party of the first and third part."

Now, if defendant engages in any part of the business he has sold for a valuable consideration at the instance of an outside party without consent as specified, he is certainly violating his agreement to not engage in any part of the business "directly or indirectly," and, moreover, he is violating the third paragraph of his agreement, wherein he says "that all good-will in said company, namely, party of the first part, is sold (by defendant) with the interest in the party of the first part." When the defendant undertakes to do any part of a job or undertaking at Clymer, or within the five-mile limit of Clymer, without consent as specified, or sets up a place of business for the purposes of any part of the business before conducted by the Clymer Furniture Company, no matter whether he does it on his own account or is employed by some party far remote, he is not acting in good faith. He sold that business for a valuable consideration, and states in writing that he did it of his own volition, and it is not claimed that there was any coercion, fraud or mistake in the whole transaction. By his contract, which was paid for, he gave up doing business in Clymer or within a radius of five miles from Clymer. He did that for all time to come, unless by written consent as specified. He limited himself only as to space, not as to time. From the language of the contract, we hold that he cannot solicit for himself or another, or deliver for himself or carry on any part of this business for another within the five-mile radius of Clymer without committing a breach of the contract. A strict construction in face of the language not to engage "directly or indirectly," and that "all good-will . . . is sold," leads us to that conclusion. To hold otherwise seems to us would be to permit not only an evasion and breach of the intention and spirit of the agreement, but the letter of the contract as well. The agreement in question seems to us practically worthless unless its purpose was to prevent the defendant using, to the detriment of plaintiffs' business, the experience he had acquired in his connection with the business in the prohibited territory, with his knowledge of the trade and his acquaintance with the customers in that particular locality. He sold his trade, skill and good-will in the furniture and undertaking business in the specified locality, and he must not interfere in any way with the purchaser without consent. He cannot exercise his skill in the prohibited territory even for another under this agreement: Richards et al. *v.* Shipley, 257 Pa. 134; Sklaroff et al. *v.* Sklaroff et al., 263 Pa. 421; Stone *v.* Stone, 64 Pa. Superior Ct. 392; Gaul *v.* Hoffman, 5 Pa. C. C. Reps. 355.

4 D. & C.

Templeton et al. *v.* Bowser.

The motion of defendant to dissolved the injunction in the particulars specified will be refused and the case directed to proceed in the regular way.

And now, April 19, 1923, this case came on to be heard by argument of counsel on motion to dissolve the preliminary injunction in certain particulars as specified in said motion, and upon due consideration thereof, as set forth in the foregoing opinion, the motion is refused and the case directed to proceed in the regular way. An exception is allowed the defendant to the order and decree of court.                    From James L. Jack, Indiana, Pa.